UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI A. ECKER,

       Plaintiff,

v.

                                   Case No. 5:05-cv-135
                                 Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

       Plaintiff was born on March 19, 1960 and has completed high school (AR 51, 70).[1] She filed an application for SSI in August 2001, which was denied on November 2, 2001 (AR 23-24, 46-49). The matter before the court is plaintiff's subsequent SSI application filed in October 2002, which alleges that she became disabled on July 25, 2001 (AR 51). Plaintiff had previous employment as a school cook and babysitter (AR 65). Plaintiff identified her disabling conditions as lower back pain, muscle weakness in the legs, sciatic nerve damage, epileptic seizures, leg pain, headaches and migraines (AR 64). After administrative denial of plaintiff's claim, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 5, 2005 (AR 14-20). This decision, which was later approved and modified by the Appeals Council, has become the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on July 25, 2001 (AR 19). Second, the ALJ found that she suffered from severe impairments of: disorders of the back, seizures, headaches, right hip pain and obesity (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> to perform light work with the option to sit or stand at will. She is unable to do prolonged walking and should never work at heights or with machinery.

(AR 19). The ALJ found that plaintiff was unable to perform her past relevant work (AR 19). The ALJ also found plaintiff's allegations regarding her limitations were not totally credible (AR 19).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 20). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs: inspector (6,500 jobs); sorter (1,200 jobs); assembler (14,700 jobs), gas attendant (3,000 jobs) and general office clerk (1,600 jobs) (AR 20).

Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 20).

## III. ANALYSIS

Plaintiff raises three issues on appeal.

### A. The ALJ erred in failing to do a psychological residual functional capacity assessment.

First, plaintiff contends that the ALJ failed to evaluate her psychiatric condition in the manner required by 42 U.S.C. § 421(h), which provides in pertinent part as follows:

> An initial determination under . . . this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

The ALJ's duty to evaluate a claimant's mental impairment is set forth at 20 C.F.R. § 416.920a(b)(1), which provides that the Commissioner "must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable impairment(s)." The ALJ has a duty to evaluate a claimant pursuant to 42 U.S.C. § 421(h) and the regulations "only if the claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment." *Marcum v. Commissioner, Social Security Admin.*, No. 98-6771, 2000 WL 92262 at *4 (6th Cir. Jan. 18, 2000) (internal quotation marks omitted). Although plaintiff's application for SSI did not claim disability due to a mental impairment and she did not raise such a claim at the administrative hearing, the court concludes that plaintiff's post-hearing examination and history of mental problems created an inference that she suffers from a mental impairment.

5

At the hearing, the ALJ observed that plaintiff's complaints regarding her legs and hips might require an additional examination (AR 466-67). The ALJ apparently concluded that such an examination had merit, because Elaine Koutanis, M.D., performed a post-hearing examination regarding plaintiff's "disorders of the spine" (AR 433-43). This post-hearing examination was unusual and identified possible mental problems. First, Dr. Koutanis concluded that plaintiff's pain behavior compromised the examination, i.e., she could not comply with most of the orthopedic maneuvers and her pain behavior seemed excessive (AR 435). As a result plaintiff's non-compliance due to reported pain, none of the range of motion studies were performed except for the lumbar spine flexion (AR 437-38), and the doctor was unable to complete the majority of the "medical source statement of ability to do work-related activities" form (AR 440-41).

Second, Dr. Koutanis concluded that plaintiff could have a mental component to her condition:

> If the new LS MRI and hip films do not show acute pathology then her pain behavior today is enhanced by very poor coping skills. A MMPI may be needed if not already done to assess the coping skills and personality.

(AR 435). The agency's regulations state that tests such as the MMPI "may provide useful data for evaluating several types of mental disorders." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.D.7. "Because it is designed, at least in part, to reveal mental illness and has the effect of hurting the employment prospects of one with a mental disability, we think the MMPI is best categorized as a medical examination." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005).

In addition, plaintiff's records indicate a history of mental problems. A "Behavioral Assessment of Pain Screening Instrument," used as part of a 1998 visit to a pain clinic, indicates that plaintiff had a "psychological distress score" suggestive of a clinically significant level of

psychological distress (AR 246). After an initial evaluation of plaintiff on February 17, 1998, Phillip M. Sorensen, M.D., a pain specialist, concluded that plaintiff's "[c]hronic pain disability rating reveals a grade IV level of dysfunction which indicates high disability - severely limiting" (AR 191).

Two years later, on October 2, 2000, plaintiff visited the emergency room at Sparrow Hospital having a grand mal seizure.[2] The doctor noted that plaintiff had a history of major depression and a history of polysubstance abuse including marijuana and speed (AR 253-54). At that time, a physician stated that plaintiff's "GAF over the past several months unclear but at present 50" (AR 253-54).[3] A GAF score of 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34. Plaintiff contends that this GAF score indicates the existence of a mental disability.

The ALJ did not consider these reports relevant, stating that "[t]he claimant has provided a plethora of documentation, however, much of it was generated years prior to her alleged onset date [i.e., July 25, 2001]" (AR 17). While these two isolated reports of mental problems in

---

[2] The seizure may have been caused by taking multiple prescription medications.

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

1998 and 2000 may have been insufficient to establish that plaintiff suffered from a mental impairment, the whole administrative record, which contained a history of mental problems and suggested that plaintiff undergo a personality test, created an inference of an existing mental impairment. Based on this record, the ALJ should have performed a psychological residual functional capacity assessment. Accordingly, the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).[4]

### B. The premise of the ALJ upon which he based his decision is in error.

Next, plaintiff contends that the ALJ "states in his opinion that no professionals have determined that [p]laintiff suffers from any significant disability." Plaintiff's Brief at 6. Plaintiff's characterization of the ALJ's decision is not accurate. The ALJ stated that, "[n]one of the claimant's treating physicians have expressed the opinion that she is totally disabled" (AR 17). Plaintiff presents no evidence in the record to refute the ALJ's statement. Plaintiff's sole evidence in support of her claim is Dr. Sorensen's opinion that plaintiff suffered from a high degree of disability. Plaintiff's Brief at 6. Dr. Sorensen's statement cannot be equated with an opinion that plaintiff was "totally disabled." Accordingly, the ALJ's decision is not based upon this erroneous premise.

---

[4] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Commissioner (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Commissioner (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

### C. The ALJ has failed to consider a significant impairment suffered by plaintiff.

Finally, plaintiff contends that the ALJ's hypothetical question posed to the vocational expert is flawed, because the ALJ found that plaintiff suffered from a severe impairment of headaches, but failed to include a limitation based on migraine headaches. Plaintiff's Brief at 7. In this regard, plaintiff contends that she has to avoid light and smells, both of which trigger her migraine headaches (AR 452-53).

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ was not required to incorporate plaintiff's migraine headaches, or her testimony that she must avoid light and unidentified smells, into the hypothetical question posed to the vocational expert. Plaintiff fails to identify any physician that found plaintiff limited by migraine headaches since the date of her SSI application or that a physician advised her to avoid light and smells. On the contrary, in October 2002, plaintiff's physician, H.D. Jones, M.D., found that her migraine headaches were "somewhat diminished" since the use of Tegretol (AR 365). Dr.

Kountanis found nothing exceptional about plaintiff's headaches, noting that her history indicated "classic migraine disorder and stress tension headaches" (AR 433). In addition, plaintiff's physician Andre B. Smith, M.D., found that she was not in any acute distress when he saw her in May, July, August, September and October, 2003(AR 378-79, 402-03). Such findings by Dr. Smith suggest that while suffered from migraine headaches, she was not incapacitated by them.

## IV.   Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of § 405(g). On remand, the Commissioner should determine whether plaintiff suffers from a mental impairment and evaluate the limitations caused by any such impairment.

Dated:  December 13, 2006          /s/ Hugh W. Brenneman, Jr.
                                   Hugh W. Brenneman, Jr.
                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).